**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
　　　　lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZHONG ZHENG, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>PINGTAN MARINE ENTERPRISE LTD., XINRONG ZHUO, and ROY YU,<br><br>　　　Defendants. | Case No. 17-cv-3807<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Zhong Zheng ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Pingtan Marine Enterprise Ltd. ("Pingtan" or the "Company"), analysts' reports and advisories about the Company, and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Pingtan from August 8, 2016 through May 10, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of Defendants' actions, and subsequent damages, took place within this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Pingtan engages in the ocean fishing business. The Company is incorporated in Cayman Islands and its principal executive offices are located at 18/F, Zhongshan Building A, No. 154 Hudong Road Fuzhou, China 350001. The Company's securities were traded on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "PME."

8. Defendant Xinrong Zhuo ("Zhuo") has been the Company's Chairman and Chief Executive Officer throughout the Class Period.

9. Defendant Roy Yu ("Yu") was the Company's Chief Financial Officer throughout the Class Period.

10. Defendants Zhuo and Yu are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

15. On August 8, 2016, the Company filed a Form 10-Q for the quarterly period ended June 30, 2016 ("2016 Q2 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2016 Q2 10-Q was signed by Defendants Zhuo and Yu. The 2016 Q2 10-Q also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Zhuo and Yu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

16. The 2016 Q2 10-Q stated the following with regards to its fishing operations in Indonesia:

> *As of June 30, 2016, we own 107 trawlers, 4 longline fishing vessels, 2 squid jigging vessels and 2 drifters and have exclusive operating license rights to 20 drifters.* We are the second largest China based fishery company operating its vessels outside of China waters and our fleet has an average remaining useful life of approximately 12 years. *These vessels are fully licensed to fish in Indonesian*, Indian, or Western and Central Pacific Ocean of the international waters.

(Emphasis added).

17. On November 18, 2016, the Company filed a Form 10-Q for the quarterly period ended September 30, 2016 (the "2016 Q3 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2016 Q3 10-Q was signed by Defendants Zhuo and Yu. The 2016 Q3 10-Q also contained signed SOX certifications by Defendants Zhuo and Yu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

18. The 2016 Q3 10-Q stated the following with regards to its fishing operations in Indonesia:

> *As of September 30, 2016, we own 107 trawlers, 4 longline fishing vessels, 2 squid jigging vessels and 2 drifters and have exclusive operating license rights to 20 drifters.* We are the second largest China based fishery company operating its vessels outside of China waters and our fleet has an average remaining useful life of approximately 11 years. *These vessels are fully licensed to fish in Indonesian*, Indian, or Western and Central Pacific Ocean of the international waters.

(Emphasis added).

19. On March 23, 2017, the Company filed a Form 10-K for the fiscal year ended: December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's quarterly and year-end financial results and position. The 2016 10-K was signed by Defendants Zhuo and Yu. The 2016 10-K also contained signed SOX certifications by Defendants Zhuo and Yu

attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20. The 2016 10-K stated the following with regards to its fishing operations in Indonesia:

> ***Among the 135 fishing vessels***, 13 are operating in Indo-Pacific waters; 12 are operating in the Bay of Bengal in India; 2 are operating in international waters of Southwest Atlantic and Southeast Pacific Oceans; 4 will be operating in international waters of Pacific Ocean upon completion of paperwork formalities, and ***the remaining vessels are licensed to operate in the Arafura Sea in Indonesia but temporarily not operating due to the moratorium discussed below***.

(Emphasis added).

21. The statements referenced in ¶¶ 15-20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company is banned from Indonesia; (2) the Company has used investor capital to finance illegal activity; and (3) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

22. On May 10, 2017, Aurelius Value published a report on the Company (the "Aurelius Value Report") asserting, among other things, that the Company is specifically banned from Indonesia, and the Company financed widespread illegal activity with investor capital. The Aurelius Value Report states in part:

> To keep the funds from investors flowing, Pingtan has crafted a fictitious narrative and paid promoters to entice retail investors into buying its shares. The stock price has surged by a factor of 4x as management has fomented speculation that its fleet will soon be redeployed in Indonesia.

> ***But Pingtan's "growth story" is a hoax. Pingtan is specifically banned from Indonesia and a senior government minister has said she would report Pingtan to the NASDAQ upon suspicion of an "international fraud case." Indonesian Armed Forces raided Pingtan's key fishing base and the Government implicated Pingtan and its affiliates in serious crimes that include human trafficking, forced labor, illegal fishing, forgery, and bribing corrupt officials.***
>
> Numerous false statements have concealed the irreparable damage from investors. With large undisclosed impairments, Pingtan is already indebted, losing money, and burning cash. The company claims to have a small fleet outside of Indonesia, but evidence shows that many of those ships are owned by the Chairman's companies, not Pingtan. This leads us to conclude that PME shares are likely worthless.
>
> ***The nature of Pingtan's fraud strikes as being especially egregious because investor capital has financed widespread illegal activity. Indonesian Supreme Court documents describe violent "torture ships" that implicate Pingtan in the modern-day slavery that has infected pockets of South East Asia's fishing industry.***
>
> Photos, documents, and drone footage provide irrefutable evidence of systematic poaching of endangered species. Pingtan-financed vessels have variously been detained by foreign governments with one "mother ship" even being added to an Interpol list in 2015.

(Emphasis added).

23. On this news, shares of the Company fell $1.16 per share or over 28% from its previous closing price to close at $2.95 per share on May 10, 2017, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publically traded securities of Pingtan during the Class Period (the

7

"Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b)    whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)    whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NASDAQ, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

32. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5
Against All Defendants**

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

38. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary

violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

39. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

40. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

41. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

42. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

### COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The

Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

48. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

49. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 23, 2017                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com


Counsel for Plaintiff