UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZHONG ZHENG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PINGTAN MARINE ENTERPRISE LTD., XINRONG ZHUO, and ROY YU,<br><br>Defendants. | Civil Action No. 17-cv-3807(DLI)(ST)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Served October 15, 2018 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT PINGTAN MARINE ENTERPRISE LTD.'S
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

 

MANATT, PHELPS & PHILLIPS, LLP
Ronald G. Blum
Yuri Mikulka (*pro hac vice*)
Samantha J. Katze
7 Times Square
New York, New York 10036
Tel: (212) 790-4500
Fax: (212) 790-4545
rblum@manatt.com
ymikulka@manatt.com
skatze@manatt.com

*Attorneys for Defendant
Pingtan Marine Enterprise Ltd.*

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 1 |
| I. PLAINTIFF CANNOT ALLEGE LOSS CAUSATION | 1 |
| II. PLAINTIFF HAS NOT ADEQUATELY PLED A MATERIAL MISREPRESENTATION OR OMISSION | 4 |
| III. PLAINTIFF HAS NOT ADEQUATELY ALLEGED SCIENTER | 7 |
| CONCLUSION | 10 |

i

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Bettis v. Aixtron SE*,
  16 Civ. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016)........................................3

*Central States, Southeast & Southwest Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 Fed. Appx. 72 (2d Cir. 2013) (Summary Order) ...............................................................2

*Cox v. Blackberry Ltd.*,
  660 Fed. Appx. 23 (2d Cir. 2016) (Summary Order) ..........................................................7 n.6

*Das v. Rio Tinto PLC*,
  16-cv-09572 (ALC), 2018 WL 4189512 (S.D.N.Y. Aug. 31, 2018)........................................9

*Fila v. Pingtan Marine Enter. Ltd.*,
  195 F. Supp. 3d 489 (S.D.N.Y. 2016)("*Pingtan I*") ......................................................2, 2 n.2, 6

*Frederick v. Mechel OAO*,
  475 Fed. Appx. 353 (2d Cir. 2012) ...........................................................................................8

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000)......................................................................................................4

*In re Barrick Gold Corp. Sec. Litig.*,
  17 Civ. 3507 (NRB), 2018 WL 4538896 (S.D.N.Y. Sep. 20. 2018) ........................................8

*In re China Organic Sec. Litig.*,
  No. 11 CIV. 8623 JMF, 2013 WL 5434637 (S.D.N.Y. Sept. 30, 2013)................................2, 3

*In re CRM Holdings, Ltd. Sec. Litig.*,
  No. 10 CIV. 00975 RPP, 2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) ......................................2

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013)...................................................................................3 n.3

*In re Gentiva Sec. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) ............................................................................... 9-10 n.7

*In re Molycorp, Inc. Sec. Litig.*,
  No. 13 Civ. 5697 (PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ..................................9

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010).........................................................................................2, 3, 3 n.3

*In re Rockwell Med. Inc. Sec. Litig.*,
  No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...............................7, 8

*Janbay v. Canadian Solar, Inc.*,
  No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ................................2

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Lopez v. Ctpartners Executive Search, Inc.*,
 173 F. Supp. 3d 12 (S.D.N.Y. 2016)..................................................................................5, 9

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
 455 Fed. Appx. 10 (2d Cir. 2011).........................................................................................3 n.3

*Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig*,
 Nos. 10-CV-4093 (DLI) (JMA), 10-CV-4104 (DLI) (JMA), 2012 WL
 1067975 (E.D.N.Y. Mar. 29, 2012)......................................................................................2 n.2

*Reilly v. U.S. Physical Therapy, Inc.*,
 17 Civ. 2347 (NRB), 2018 WL 3559089 (S.D.N.Y. Jul. 23, 2018) ...............................8, 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd..*,
 551 U.S. 308 (2007)................................................................................................................7

*Thomas v. Shiloh Indus., Inc.*,
 15-cv-7449 (KMW), 2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017).....................................8, 9

## STATUTES

15 U.S.C. § 78j(b)/Section 10(b) ........................................................................................1, 3 n.3
15 U.S.C. § 78u-4(b)/PSLRA ..................................................................................................1, 5
15 U.S.C. § 78u-5(i)....................................................................................................................5 n.4
15 U.S.C. § 78u-5(c)......................................................................................................................5

## RULES

2d Cir. Local Rule 32.1.1............................................................................................................7 n.6
Fed. R. App. Proc. 32.1...............................................................................................................7 n.6
Fed. R. Civ. P. 9(b).........................................................................................................................1
17 C.F.R. § 240.10b-5/Rule 10b-5.........................................................................................1, 3 n.3

**PRELIMINARY STATEMENT**

Pingtan's opening memorandum makes clear that Plaintiff has not stated a securities fraud claim, not least of all because the Aurelius Article on which Plaintiff bases her claims is nothing more than a non-actionable "negative journalistic characterization of previously disclosed facts."[1]  Thus, Plaintiff cannot plead loss causation.  In addition, Pingtan's opening brief showed that Plaintiff failed to adequately allege a material misrepresentation or omission, and scienter -- let alone with the particularity required by the PSLRA and Fed. R. Civ. P. 9(b).

In response, Plaintiff throws out a plethora of theories why this Court should not dismiss her claim.  Yet, in doing so, Plaintiff largely relies on case law that is either outdated or from outside the Second Circuit, misconstrues Pingtan's arguments and statements in public filings, and fails to cure the deficiencies in the Amended Complaint.  Despite what Plaintiff argues, Plaintiff has not stated a claim under Section 10(b) and Rule 10b-5 because Plaintiff fails to adequately plead the essential elements of loss causation, a material misrepresentation or omission, and scienter.  None of Plaintiff's arguments can withstand Pingtan's motion.

**ARGUMENT**

**I.    PLAINTIFF CANNOT ALLEGE LOSS CAUSATION**

In its opening memorandum of law, Pingtan demonstrated that Plaintiff's reliance on the Aurelius Article to support her 10b-5 claim is misplaced because the article is based on publicly available information and therefore cannot constitute a corrective disclosure.  In response, Plaintiff argues that (1) the Court should not decide loss causation on a motion to dismiss; (2) Pingtan's loss causation argument is really a "truth on the market" affirmative defense that also should not be decided on a motion to dismiss; and (3) the foreign sources underlying the

---

[1] Capitalized terms not otherwise defined have the meanings ascribed to them in Pingtan's moving brief dated July 30, 2018 ("Pingtan Mem.").

Aurelius Article do not, as a matter of law, foreclose the Court from finding a corrective disclosure. Plaintiff's arguments fail.

*In re Omnicom Group, Inc.* holds that third-party articles expressing negative opinions based on publicly available information are insufficient to plead loss causation because "[a] negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions." *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). Plaintiff urges the Court to disregard this well-settled law because *In re Omnicom Group, Inc.* was decided on summary judgment, not a motion to dismiss.

But the Second Circuit has applied *Omnicom* at the motion to dismiss stage. *Central States, Southeast & Southwest Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 Fed. Appx. 72, 74 (2d Cir. 2013) (Summary Order).[2] Moreover, courts in this circuit regularly rely on *Omnicom* at the pleading stage and dismiss complaints for failure to plead loss causation. *See, e.g., Pingtan I*; *In re China Organic Sec. Litig.*, No. 11 CIV. 8623 JMF, 2013 WL 5434637, at *7-9 (S.D.N.Y. Sept. 30, 2013); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 CIV. 00975 RPP, 2013 WL 787970, at *6 (S.D.N.Y. Mar. 4, 2013); *Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430 (RWS), 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012).

Unable to dispute that the Aurelius Article is based on publicly disclosed information, Plaintiff next argues that the sources of the public information are insufficient because they are

---

[2] For this reason also, the Court should reject Plaintiff's assertion that Pingtan's reliance on a decision by Judge Nathan in *Pingtan I* is "misplaced" because, as a decision from a sister court, it "is not binding upon this Court." (Opp. Mem. at 7) Moreover, this Court regularly relies on decisions from the Southern District in deciding securities cases. *See, e.g., Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig*, Nos. 10-CV-4093 (DLI) (JMA), 10-CV-4104 (DLI) (JMA), 2012 WL 1067975 (E.D.N.Y. Mar. 29, 2012).

2

"obscure foreign disclosures." (Opp. Mem. at 8)  That argument lacks legal support and is outdated factually – it ignores that publications are readily accessible and read on-line.

First, Plaintiff does not cite a single case that refuses to apply *Omnicom* because the information on which the alleged corrective disclosure was based was disclosed by foreign sources.  Nor does Plaintiff cite a decision limiting *Omnicom* to instances where the information underlying the alleged corrective disclosure was revealed in American newspapers.[3]  In addition, Southern District Judge Colleen MacMahon rejected the argument, raised by Plaintiff's counsel in another case, that a news report "should not be viewed as part of the total mix of information reasonably available to shareholders" simply because it "was not reported in as widely distributed publications as *The New York Times* or the *Wall Street Journal*." *See Bettis v. Aixtron SE*, 16 Civ. 00025 (CM), 2016 WL 7468194, at *12 (S.D.N.Y.  Dec. 20, 2016).  Regardless, the *Sydney Morning Herald* is far from "obscure;" and today, even "obscure" publications are found easily on-line.

In any event, the Aurelius Article also relies on information in Pingtan's public filings, cutting and pasting directly from Pingtan's 2015 10-K. (*See* Pingtan Mem. at 13)  Plaintiff concedes that "information disclosed in publicly available SEC filings is part of the overall 'mix of information' regarding a company." (Opp. Mem. at 8)  Thus, the pleading cannot be saved by arguing that the Aurelius Article is based "in large part" on "obscure foreign disclosures." (Opp. Mem. at 8)

---

[3] Plaintiff supports her arguments on loss causation and the truth-on-the-market doctrine (discussed below) with cases that pre-date *Omnicom* or are from outside this circuit. (Opp. Mem. at 5-9)  The only two that post-date *Omnicom* and are local are inapposite. *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 Fed. Appx. 10 (2d Cir. 2011), does not address loss causation.  In *In re Facebook, Inc. IPO Sec. and Deriv. Litig.*, 986 F. Supp. 2d 487, 522-23 (S.D.N.Y. 2013), loss causation was not an element of the claims, which were under Sections 11 and 12 of the Securities Act, not Section 10(b) and Rule 10b-5.

3

Grasping at straws, Plaintiff re-characterizes this well-recognized argument as a "truth on the market" affirmative defense. (Opp. Mem. at 5-6)  Yet, "truth on the market" is a defense to materiality, not loss causation. (*See* Opp. Mem. at 6) *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("Under [the truth on the market] corollary, a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market.").  And, while Pingtan also argues that Plaintiff has failed to allege a material misrepresentation or omission, the Court should not allow Plaintiff to conflate Pingtan's materiality argument with Pingtan's equally meritorious contention that Plaintiff has failed to plead loss causation because the Aurelius Article is based on public information.

## II. PLAINTIFF HAS NOT ADEQUATELY PLED A MATERIAL MISREPRESENTATION OR OMISSION

Pingtan also showed in its moving brief that Plaintiff fails to plead a material misrepresentation or omission with respect to Indonesian and Timor-Leste fishing licenses. (Pingtan Mem. at 15-20)  Plaintiff's arguments to the contrary fail.

The Amended Complaint alleges that Pingtan's SEC filings are false and misleading because "Pingtan never had any licenses to fish in Indonesian waters" and "Pingtan's vessels were never licensed to fish in Indonesian waters." (Katze Dec. Ex. A ¶¶ 5-6, 47)  Yet, even accepting for purposes of this motion that Pingtan's statements concerning whether it was licensed to fish in Indonesia were false or misleading, the fact remained that Pingtan was banned from fishing in Indonesia and had not done so since February 2015.  Thus, whether or not Pingtan was licensed to fish in Indonesia, Plaintiff cannot plausibly allege that such purported misrepresentations would be material. (Pingtan Mem. at 17-18)

In fact, Pingtan repeatedly disclosed in public filings that it was not fishing in Indonesia during the putative class period and had not done so since February 2015, resulting in a

4

significant drop in Pingtan's production and significant negative impact on the company. (Pingtan Mem. at 7-8) Faced with those disclosures, Plaintiff asserts that her "argument is not that Pingtan misled by misrepresenting the current fishing situation, but rather by misrepresenting its *future revenue prospects* when the temporary ban would be lifted." (Opp. Mem. at 9 (emphasis added)) Such allegations cannot circumvent the bespeaks caution doctrine or the PSLRA's safe harbor for forward-looking statements. *See* 15 U.S.C. § 78u-5(c).[4]

"The 'bespeaks caution' doctrine generally protects forward-looking statements that adequately disclose the risk factors that might cause a different outcome to occur than the one then forecast by the issuer." *Lopez v. Ctpartners Executive Search, Inc.*, 173 F. Supp. 3d 12, 39 (S.D.N.Y. 2016). Under this doctrine, a forward-looking statement is not actionable where it is "'accompanied by sufficient cautionary language . . . because no reasonable investor could have found the statement materially misleading.'" *Id.* The PSLRA similarly protects defendants from liability for statements "identified as a forward-looking statement, and . . . accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c); *Lopez*, 173 F. Supp. 3d at 39. Here, there can be no question that Pingtan's statements concerning fishing in Indonesia, to the extent they were forward-looking, were accompanied by the required "sufficient cautionary language" or "meaningful cautionary statements." (*See* Reply Declaration of Samantha J. Katze in Further Support of Pingtan Marine Enterprise Ltd.'s Motion to Dismiss ("Katze Reply Dec."), Exs. A at 3, 5, 10, 13, 20, 32-35, F-9, F-12, F-17; B at TOC, 6, 9, 14, 26-27, 29, 38; C at TOC, 6, 8, 14, 26-27, 29, 41; D at TOC, 6, 9, 14, 27-28, 30, 40; E at 2, 5 (of

---

[4] Forward-looking statements include "statement[s] containing a projection of revenues, income…earnings…or other financial items[,]" "statement[s] of the plans and objectives of management for future operations" and "statement[s] of future economic performance." 15 U.S.C. § 78u-5(i).

5

PDF), 7, 16, 28-31, 36, F-8, F-11, F-16) Thus, even under Plaintiff's new theory, Pingtan's statements are not actionable.

Furthermore, Plaintiff mischaracterizes Pingtan's argument regarding the impact of Plaintiff's allegations concerning Pingtan's March 14, 2018 10-K. Pingtan is not arguing that it can "use its subsequent grudging acknowledgment that its prior statements were false to avoid liability." (Opp. Mem. at 10) Rather, Pingtan asserts that Plaintiff's allegations in paragraph 65 of the Amended Complaint (and others) contradict Plaintiff's allegations that Pingtan or its vessels were *"never"* licensed to fish in Indonesia. And, as a result of such contradictions, the Court need not accept as true Plaintiff's allegations that Pingtan or its vessels were *"never"* licensed to fish in Indonesia. (Pingtan Mem. at 16)

Moreover, Plaintiff argues that whether Pingtan itself ever held valid fishing licenses in Indonesia gives rise to a factual dispute concerning materiality. But Plaintiff never explains how it does, and with good reason. (Opp. Mem. at 10) Regardless of whether Pingtan held Indonesian fishing licenses itself, held Indonesian fishing licenses through third parties, or held no Indonesian fishing licenses whatsoever, "the underlying state of affairs described in the public filings remains the same[,]" *Pingtan I*, 195 F. Supp. 3d at 496, *i.e.*, Pingtan was banned from fishing in Indonesia and had not fished there since February 2015. (Pingtan Mem. at 6-8, 15-18)

Plaintiff's arguments concerning Timorese fishing licenses also fail. Without any cites to Pingtan's public filings, Plaintiff declares that "Pingtan stated falsely that it itself was licensed to fish in Timorese waters." (Opp. Mem. at 11) But no matter how hard Plaintiff tries to twist Pingtan's words, Plaintiff has not identified a single instance in which Pingtan reported that Timor-Leste issued licenses directly to Pingtan, rather than to vessels controlled by the company.

6

(Opp. Mem. 11-12)[5]  Nor does Plaintiff "really have" any "theory as to why omitting mention" that the Timor-Leste licenses were issued to Hong Long "rendered any of" Pingtan's "public statements misleading." *In re Rockwell Med. Inc. Sec. Litig.*, No. 16 Civ. 1691 (RJS), 2018 WL 1725553, at *11 (S.D.N.Y. Mar. 30, 2018).  "Here it bears repeating; simply because an omitted fact would be 'interesting' to an investor does not render all other statements on that topic misleading absent disclosure.  Such a broad theory of omissions liability would paralyze corporate spokespersons and likely yield less, rather than more information for investors. . . ." *Id.* (internal citations omitted).

### III.     PLAINTIFF HAS NOT ADEQUATELY ALLEGED SCIENTER

In addition, and as Pingtan previously demonstrated, Plaintiff has not sufficiently alleged scienter.  Not only has Plaintiff failed to plead facts to allege individual scienter that can be imputed to Pingtan, but Plaintiff also has not alleged statements so "dramatic" as to infer corporate scienter. (Pingtan Mem. at 21-24)  None of Plaintiff's arguments show otherwise.[6]

In response to Pingtan's argument that Plaintiff has not alleged motive with respect to Mr. Zhuo and Mr. Yu, Plaintiff asserts that Pingtan relies on a contention that has been rejected by the Supreme Court, i.e., "that the Individual Defendants . . . did not sell stock at inflated prices during the Class Period." (Opp. Mem. 13)  But that is not what Pingtan argues.  Rather, Pingtan contends that Plaintiff has not alleged motive sufficient to plead scienter because Plaintiff has not alleged that the Individual Defendants benefitted from the alleged fraud. (Pingtan Mem. 22)  *Tellabs* is beside the point. (Opp. Mem. 13)

---

[5] Plaintiff's analogy of giving car keys to a minor makes no sense because driver's licenses are issued to people, not individual cars. (*See* Opp. Mem. at 11)

[6] Plaintiff is wrong that *Cox v. Blackberry Ltd.*, 660 Fed. Appx. 23 (2d Cir. 2016), may not be cited. (Opp. Mem. 16)  *See* Fed. R. App. Proc. 32.1; 2d Cir. Local Rule 32.1.1.

7

Nor can Plaintiff seek refuge in the core operations doctrine. (Opp. Mem. at 14) "Under the core operations theory, 'if a plaintiff can plead that a defendant made false or misleading statements when contradictory facts of critical importance to the company either were apparent, or should have been apparent, an inference arises that high-level officers and directors had knowledge of those facts by virtue of their positions within the company.'" *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14. However, "[t]he Second Circuit has . . . questioned whether the core operation doctrine has survived the enactment of the PSLRA[,]" *id.* at *14 (citing *Frederick v. Mechel OAO*, 475 Fed. Appx. 353, 356 (2d Cir. 2012)), and "the majority rule is to 'consider the core operations allegations to constitute supplementary, but not an independent means to plead scienter.'" *In re Barrick Gold Corp. Sec. Litig.*, 17 Civ. 3507 (NRB), 2018 WL 4538896, at *10 (S.D.N.Y. Sep. 20. 2018) (quotation marks omitted). "Therefore, even assuming that the core operations doctrine has continuing vitality as a legal doctrine, it would be far from sufficient, standing alone, to raise a strong inference of scienter in this case." *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *15.

Moreover, courts applying the core operations doctrine generally require that the purported core operations at issue constitute "'nearly all of a company's business before finding scienter.'" *Thomas v. Shiloh Indus., Inc.*, 15-cv-7449 (KMW), 2017 WL 1102664, at *4 (S.D.N.Y. Mar. 23, 2017); *see also Reilly v. U.S. Physical Therapy, Inc.*, 17 Civ. 2347 (NRB), 2018 WL 3559089, at *18 (S.D.N.Y. Jul. 23, 2018). Here, Plaintiff contends that "Defendants themselves acknowledged that a majority of Pingtan's revenue was derived from fishing in Indonesian waters" (Opp. Mem. at 15; *see also* Katze Dec. Ex. A ¶ 62), but does not allege that Indonesian fishing "ever comprised 'nearly all'" of Pingtan's business. *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14. Thus, Plaintiff's core operations argument fails.

8

In addition, Plaintiff contends that she has adequately pled scienter because she "alleges that the Individual Defendants knowingly misrepresented the Company's license status in Pingtan's SEC filings, in which they declared pursuant to the Sarbanes-Oxley Act that the statements contained therein were accurate." (Opp. Mem. at 15) However, the cases Plaintiff relies on to argue that "[f]alse Sarbanes-Oxley certifications are evidence of scienter" (Opp. Mem. at 15) -- all from outside the Second Circuit -- are not dispositive. Courts in this circuit regularly hold that the signing of a SOX certification, without more, is insufficient to plead scienter. *Das v. Rio Tinto PLC*, 16-cv-09572 (ALC), 2018 WL 4189512, at \*19 (S.D.N.Y. Aug. 31, 2018); *Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at \*5; *In re Molycorp, Inc. Sec. Litig.*, No. 13 Civ. 5697 (PAC), 2015 WL 1097355, at \*12 (S.D.N.Y. Mar. 12, 2015). In fact, "these certifications typically 'add nothing substantial to the scienter calculus' because 'allowing Sarbanes-Oxley certifications to create an inference in every case . . . would eviscerate the pleading requirements for scienter set forth in the PSLRA.'" *Reilly*, 2018 WL 3559089, at \*19.

Regarding the Timor-Leste licenses, Plaintiff contends that "[i]t is highly unlikely that the Company would issue" a statement to the *Sydney Morning Herald*, as alleged in the Amended Complaint, "without knowledge and approval of its top executives." (Opp. Mem. at 16) But "Plaintiff's theory . . . fails to support a claim for securities fraud because, quite simply, it is complete conjecture. . . . This self-serving speculation falls far short of a plausible pleading, let alone one that satisfies Rule 9(b)'s requirement that fraud be pled with particularity." *See Lopez v. Ctpartners Executive Search, Inc.*, 173 F. Supp. 3d at 41.[7]

---

[7] Plaintiff's assertion that "surely lower ranked employees possessed such knowledge" is similarly speculative. (Opp. Mem. at 17) Moreover, as set forth in Pingtan's moving brief, other than conclusory statements that are not accepted as true, the Amended Complaint "contains no allegations as to whether these other unnamed employees were acting within the scope of

9

Plaintiff also cannot rely on Pingtan's statements in its 2015 and 2016 10-Ks concerning Mr. Zhuo's familiarity with Pingtan's business.  When viewed in full, rather than as selectively quoted by Plaintiff, the statements do not address Mr. Zhuo's knowledge of fishing operations in Indonesia and Timor-Leste.  Instead, the 10-Ks refer to Mr. Zhuo's "extensive knowledge of *China's* fishing industry" and, accordingly, do not support scienter here. (Katze Reply Dec. Exs. A at 55; E at 49 (emphasis added); *see also* Katze Dec. Ex. A ¶ 66; Opp. Mem. at 16)

Moreover, even were the Court to consider Plaintiff's scienter allegations "holistically," as Plaintiff urges (*see* Opp. Mem. at 17-18), such allegations are insufficient.  As noted in *Reilly v. U.S. Physical Therapy, Inc.*, "inadequate allegations . . . cannot be combined to demonstrate scienter—zero plus zero cannot equal one." 2018 WL 3559089, at *19.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Pingtan's moving brief, Pingtan respectfully requests that the Court issue an Order: (1) dismissing with prejudice the Amended Complaint as against Pingtan; and (2) granting such further relief as the Court deems proper.

Dated: October 15, 2018
       New York, New York

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By:  s/ Ronald G. Blum
    Ronald G. Blum
    Yuri Mikulka (*pro hac vice*)
    Samantha J. Katze
    7 Times Square
    New York, New York 10036
    (212) 790-4500

    *Attorneys for Defendant*
    *Pingtan Marine Enterprise Ltd.*

---

employment or if there is any other basis to impute their scienter to"  Pingtan. *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 384 (E.D.N.Y. 2013). (Pingtan Mem. at 23 n.8)